Filing # 114801036 E-Filed 10/12/2020 12:27:03 PM

### IN THE CIRCUIT COURT OF THE 2nd JUDICIAL CIRCUIT
### IN AND FOR FRANKLIN COUNTY, FLORIDA

CASE NO.: 20-000084-CA
JUDGE: JONATHAN SJOSTROM

DEBORAH HILL and ROBERT HILL,
her husband,

        Plaintiffs,

vs.

DIEBOLD NIXDORF, INCORPORATED f/k/a
DIEBOLD, INCORPORATED,

        Defendant.
_____/

### COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, DEBORAH HILL and ROBERT HILL, her husband, sue Defendant, DIEBOLD NIXDORF, INCORPORATED f/k/a DIEBOLD, INCORPORATED, and state as follows:

### GENERAL ALLEGATIONS

1. This is an action for negligence in which the damages exceed Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs.

2. Venue is proper in this court because the negligence occurred in Franklin County, Florida, and because the cause of action for this case accrued in Franklin County, Florida.

3. Plaintiff, Deborah Hill, ("Mrs. Hill"), is and was at all times material a resident of Franklin County, Florida.

4. Plaintiff, Robert Hill, ("Mr. Hill"), is and was at all times material a resident of Franklin County, Florida.

5. Mrs. Hill and Mr. Hill are and have at all times material been legally married.

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

6.  Defendant, Diebold Nixdorf, Incorporated f/k/a Diebold, Incorporated, ("Diebold"), is a publicly traded, for-profit foreign corporation formed under the laws of the State of Ohio that, at all times material, has done and is doing substantial business in the State of Florida, and has done and is doing business in Franklin County, Apalachicola, Florida.

7.  Diebold states in its Form 10-K for the fiscal year ending December 31, 2017 filed with the United States Securities and Exchange Commission that "[w]ith approximately 15,000 highly-trained service employees and a global delivery network, Diebold Nixdorf is the global leader in servicing distributed digital and physical assets for banking and retail customers[,]" and that "[r]ecent investments in additional replacement service technicians, training and support systems is optimizing the Company's service delivery." *See* https://investors.dieboldnixdorf.com/static-files/73fec901-990d-4265-8b4f-048753d897ab.

8.  Further, Diebold states in its Form 10-K that "[p]roduct-related services provided by the Company include rapid resolution of incidents through remote service capabilities or an on-site visit. First and second line maintenance, preventative maintenance and on-demand services leverage a standardized incident management process to increase uptime of distributed assets." *See* https://investors.dieboldnixdorf.com/static-files/73fec901-990d-4265-8b4f-048753d897ab.

9.  In accordance with its products and services offered to customers, Diebold is believed to have entered into a "Managed Equipment and Services Agreement" with Centennial Bank that included providing maintenance and repairs to certain banking-related equipment, including but not limited to the bank vault(s) and camera security system located in the Centennial Bank branch with an address of 22 Avenue E, Apalachicola, Florida. Copies of the applicable and effective "Managed Equipment and Services Agreement" is in the sole possession of Diebold, but Plaintiffs will request and obtain such in discovery.

2

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

10. As described herein, Diebold engages in substantial and not isolated activities in the State of Florida that are continuous and systematic.

11. As described herein, Diebold committed a tort in the State of Florida.

### FACTUAL ALLEGATIONS

12. On October 2, 2017, Diebold, directly and through its employees or agents, was performing repairs and/or maintenance on the vault at Centennial Bank branch located at 22 Avenue E, Apalachicola, Florida.

13. During the performance of repairs and/or maintenance of the vault, Diebold, directly and through its employees or agents, negligently used lubricants, cleaners or other substances such that residue got onto the tile floor of the bank.

14. The lubricants, cleaners or other substances being used by Diebold, its employees or agents, were clear or were so lightly colored substances that when on the tile floor of the bank they were not visible or were extremely difficult to see by those in the bank other than Diebold and its employees or agents, thereby causing a deceptively dangerous condition likely to cause injury, loss or damage to people inside the bank, including but not limited to bank employees and customers.

15. Diebold, directly and through its employees or agents, failed to warn anyone in the bank, including bank employees and customer, that the floors were and would be slippery.

16. Diebold, directly through its employees or agents, failed to deploy any adequate signs warning of the dangerous condition, failed to put up any adequate caution tape, failed to adequately rope the area off, and failed to prevent people in the bank from walking near the vault or area where they know the slippery substances and residue would likely get on the bank floor.

17. Further, Diebold, directly and through its employees or agents, failed to put down an adequate floor protection to prevent the lubricants, cleaners or other substances from getting on

3

**EXHIBIT A**

the bank floor and creating a dangerous condition that foreseeably would cause injury, loss or damage to someone in the bank.

18. After completing the maintenance and/or repairs, Diebold, through its employees or agents, failed to adequately clean the area around the vault and left dangerous residue of the lubricants, cleaners or other substances on the bank's tile floor.

19. The next day, October 3, 2017, Mrs. Hill, a bank employee at the time, was walking out of the bank's branch manger's back towards her cubical when she slipped and fell on the slippery lubricants, cleaners or other substances, which were invisible or deceptively not able to be seen with reasonable care by Mrs. Hill, and that were negligently left on the floor having been used by Diebold and its employees or agents, to perform repairs and/or maintenance on the bank vault.

20. When she fell, Mrs. Hill hit her head on a door frame severely and permanently injuring her head and brain.

21. In addition, Mrs. Hill injured her elbow, fingers, hand and foot.

22. After falling and hitting her head, Mrs. Hill felt nauseous and went to the bank bathroom where she vomited.

23. As a direct result of her injuries, Mrs. Hill has suffered and still suffers from severe migraines, severe tinnitus, imbalance, eye spasms, memory deficits and other related conditions.

24. As a direct result of her injuries, Mrs. Hill had to have surgery on her middle ear that required drilling holes in her skull.

25. As a direct result of her injuries, Mrs. Hill has had to take and continues to take medications she never had to take before the incident.

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

26. Mrs. Hill has been unable to work since the incident and remains unable to work as a result of her severe and permanent injuries caused solely by Diebold's, its employees' or agents' negligence as described herein.

27. But for the negligence of Diebold, directly and through its employees or agents, Mrs. Hill would not have been injured.

### COUNT I
### Negligence Claim Against Diebold

28. Plaintiffs re-allege and re-affirm all the allegations contained in paragraphs 1 through 27, and further allege as follows:

29. At all times material, Diebold and its employees or agents use lubricants, cleaners or other substances to repair and/or maintain bank vaults, including the subject bank vault at the Centennial Bank located in Apalachicola, Florida where the subject incident occurred.

30. At all times materials, it was and is foreseeable to Diebold that using lubricants, cleaners or other substances to repair and/or maintain bank vaults in an area surrounded by tile floor, would cause the floor to become slippery and dangerous if adequate precautions, warnings and rules were not taken or followed to prevent the lubricants, cleaners and other substances from getting onto the floor.

31. At all times material, it was and is foreseeable to Diebold that failing to properly protect and adequately clean the floor around an area where lubricants, cleaners or other substances are being used would cause the floor to remain slippery and pose a danger.

32. At all times material, it was and is also foreseeable to Diebold that people such as bank employees like Mrs. Hill would walk on the tile floor near the bank vault when the tile was slippery due to lubricants, cleaners or other substances being left on the floor.

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

33. Diebold lubricates vault doors and cleans vault doors on a regular basis and spillage or overspray of such substances is foreseeable and expected by Diebold and its employees and agents.

34. Spillage or overspray of lubricants, cleaners or other substances occurs on such a regular basis that Diebold has or should have policies and procedures regarding the use of lubricants, cleaners and other substances that its employees or agents are required to follow.

35. Alternatively, spillage or overspray of lubricant or cleaner occurs on such a regular basis that Diebold was aware that it needed adequate policies and procedures for its employees or agents to follow when using lubricants, cleaners or other substances in order to prevent people from slipping on spills or overspray.

36. Diebold had a duty to use reasonable care in performing repairs and/or maintenance with lubricants, cleaners or other substances on the Centennial Bank vault on October 2, 2017, because Diebold's conduct created a foreseeable zone of risk that posed a general threat of harm to others like Mrs. Hill when she walked in the area where Diebold and its employees and agent knew people such as Mrs. Hill would walk and where Diebold and its employees and agents had been performing repairs and/or maintenance on the vault the day before.

37. Spraying, or applying lubricants, cleaners or other substances to repair and/or maintain a bank vault over a tile floor created a dangerous condition known to Diebold that foreseeably would result in a slippery floor, especially when the substances used were clear or extremely difficult to see when on a tile floor even with the use of reasonable care.

38. Diebold also had a duty to exercise reasonable care in creating or following proper policies and procedures to prevent the creation of a dangerous area on a floor when it performed repairs and/or maintenance on the bank vault door.

39. Diebold breached its duty to use reasonable care in the following ways:

6

DAVID C. RASH, P.A.
1055 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

a. Allowing or permitting employee or agents to spray or apply lubricants, cleaners or other substances while repairing and/or maintaining the bank vault door over a tile floor;

b. Failing to require its employees or agents to utilize a direct transfer method of applying lubricants, cleaners or other substances on the vault and instead utilized a spray method of application;

c. Failing to adequately warn by placing proper signage, taping off or roping off or sectioning off the area around the vault until the area is properly cleaned and made safe;

d. Failing to properly clean the tile floor after performing the repairs and/or maintenance;

e. Failing to utilize a protective layer on the tile floor when performing the repairs and/or maintenance on the vault door;

f. Failing to implement proper policies and procedures which dictate the correct and safe method for its employees or agents to perform this work on the vault;

g. Failing to require its employees or agents to follow its policies and procedures regarding repairing and/or or maintaining bank vaults when the employees or agents performed these repairs or maintenance; and/or

h. Failing to properly train its employees or agents to utilize safe maintenance and cleaning practices which would eliminate the dangerous areas created by the repairs and/or maintenance being performed;

40. By utilizing lubricants, cleaners or other substances on the bank vault door and failing to utilize a protective floor covering or by properly cleaning the floor around the bank vault

7

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

door, it was foreseeable to Diebold, and it knew or should have known that someone like bank employee Mrs. Hill would be severely injured by slipping on the floor.

41. Diebold's negligence and failure to use reasonable care caused Mrs. Hill to slip on the floor and suffer her severe and permanent injuries.

42. Diebold's failure to use reasonable care in the creation, application and implantation of proper policies and procedures for the repair and/or maintenance of bank vault doors caused Mrs. Hill to slip on the floor and her injuries.

43. Diebold knew or should have known there was a safer and more reasonable method to performing repairs and/or maintenance on the vault, which would not have resulted in a deceptively and dangerously slippery floor.

44. But for Diebold's negligence, Mrs. Hill would not have been injured.

## DAMAGES

45. As a direct and proximate result of the above described negligence of Seibold Security and/or Seibold Security Florida, Mrs. Hill was severely and permanently injured, and is entitled to the following damages:

   a. Injury, pain, disability, disfigurement, scarring, loss of capacity for enjoyment of life, aggravation of a preexisting condition, medical expenses, lost wages, lost future earnings and earning capacity, in the past as well as in the future, and any and all other damages available by law.

46. As a direct and proximate result of the above described negligence of Seibold Security and/or Seibold Security Florida, and resulting severe and permanent injuries to Mrs. Hill, his wife, Mr. Hill is entitled to following damages:

   b. Loss of consortium, services, support, love, comfort, society and attentions, in the past as well as in the future, and any and all other damages available by law.

8

**EXHIBIT A**

WHEREFORE, Plaintiffs, DEBORAH HILL and ROBERT HILL, her husband, hereby demand judgment against Defendant, DIEBOLD NIXDORF, INCORPORATED f/k/a DIEBOLD, INCORPORATED, for damages in excess of Thirty Thousand Dollars ($30,000.00), exclusive of interest and costs, and all other relief deemed just and proper under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs further demand a trial by jury on all issues so triable as a matter of right.

Dated: October 12, 2020.

        DAVID C. RASH, P.A.
        Attorneys for the Plaintiff
        1655 North Commerce Parkway
        Suite 303
        Weston, Florida 33326
        Telephone: (954) 515-0072
        Facsimile: (954) 515-0073
        Primary Email: david@dcrashlaw.com
        Secondary Emails: jeff@dcrashlaw.com
                          maileidys@dcrashlaw.com

By:   */s/ David C. Rash*
       DAVID C. RASH
       Florida Bar # 977764
       JEFFREY D. MUELLER
       Florida Bar #103563

9

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**

Filing # 114801036 E-Filed 10/12/2020 12:27:03 PM

IN THE CIRCUIT COURT OF THE 2nd JUDICIAL CIRCUIT
IN AND FOR FRANKLIN COUNTY, FLORIDA

CASE NO.:
JUDGE:

DEBORAH HILL and ROBERT HILL,
her husband,

        Plaintiffs,

vs.

DIEBOLD NIXDORF, INCORPORATED f/k/a
DIEBOLD, INCORPORATED,

        Defendants.
_____/

## NOTICE OF DESIGNATION OF PRIMARY AND SECONDARY E-MAIL ADDRESSES

COME NOW, the Plaintiffs, DEBORAH HILL and ROBERT HILL, by and through their undersigned counsel and pursuant to Florida Rule of Judicial Administration 2.516, and hereby designates the Primary and Secondary E-mail addresses, and request that copies of all orders, process, pleadings, and other documents filed or served in this matter be served at the Primary and Secondary E-mail addresses listed below, with such service E-mail complying with Rule 2.516(b)(1)(E):

    Primary e-mail:    **david@dcrashlaw.com**

    Secondary e-mails:    **jeff@dcrashlaw.com**
                          **maileidys@dcrashlaw.com**

Where service of hard copies is to be made in addition to the e-mail service required by Rule 2.516(b)(2), counsel requests that the copies be served upon them at the physical address listed below.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served along with

**EXHIBIT A**

the Summonses and Complaint for Damages and Demand for Jury Trial on the Defendant, DIEBOLD NIXDORF, INCORPORATED f/k/a DIEBOLD, INCORPORATED,

>DAVID C. RASH, P.A.
>Attorneys for the Plaintiff
>1655 North Commerce Parkway
>Suite 303
>Weston, Florida 33326
>Telephone: (954) 515-0072
>Facsimile:   (954) 515-0073
>Primary Email: david@dcrashlaw.com
>Secondary Emails: jeff@dcrashlaw.com
>                  maileidys@dcrashlaw.com
>
>By: __/s/ David C. Rash_____
>     DAVID C. RASH
>     Florida Bar #977764
>     JEFFREY D. MUELLER
>     Florida Bar #103563

2

DAVID C. RASH, P.A.
1655 NORTH COMMERCE PARKWAY, SUITE 303, WESTON, FLORIDA 33326 - TELEPHONE (954) 515-0072 FACSIMILE (954) 515-0073

**EXHIBIT A**