UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DEBORAH and ROBERT HILL,

      Plaintiffs,

      v.

DIEBOLD NIXDORF, INC.,

      Defendant.

CASE NO.: 4:20-00524-MW-MAF

## DEFENDANT DIEBOLD NIXDORF, INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL CORPORATE DESIGNEES FOR COMPLETING RULE 30(B)(6) DEPOSITION

## I.    INTRODUCTION

Defendant Diebold Nixdorf, Inc. produced two corporate representatives to testify about 10 of the 15 broad, wide-ranging topics contained in Plaintiffs' Second Re-Notice of Taking Video Deposition of Defendant Pursuant to Fed. R. Civ. P. 30(b)(6). Plaintiffs withdrew two of the topics after receiving Diebold's timely and proper objections. The remaining three topics are overbroad and are not stated "with reasonable particularity" as required by Rule 30(b)(6). Although Plaintiffs now attempt, through their Motion to Compel, to make these remaining topics sound reasonable by narrowing their scope, Plaintiffs never made such concessions prior to filing their Motion to Compel. To the contrary, Plaintiffs took a "take-it-or-leave-it" approach and did not engage in any substantive meet-and-

confer discussion prior to filing their Motion to Compel.  Accordingly, Diebold respectfully requests that the Court deny Plaintiffs' Motion to Compel or, in the alternative, order Plaintiffs to issue a revised Notice that describes any remaining appropriate topics with reasonable particularity.

## II.    **PROCEDURAL HISTORY**

This personal injury case arises from an incident that occurred on October 3, 2017, when Plaintiff Deborah Hill slipped while walking out of her manager's office at the Centennial Bank located at 22 Avenue East in Apalachicola, Florida. Plaintiffs allege that Ms. Hill slipped due to residue left on the floor by a Diebold technician who had been servicing the bank's vault door the prior day.  (ECF No. 1-1 at ¶ 19).  Plaintiffs assert negligence claims against Diebold alleging that it failed to create proper policies, train its employees, and protect others from areas where lubricants, cleaners, or other substances may have spilled.[1] (*Id.* at ¶ 39).

On February 22, 2021, Plaintiffs served Diebold with a Second Re-Notice of Taking Video Deposition of Defendant Pursuant to Fed. R. Civ. P. 30(b)(6).  (ECF No. 21-1, Exhibit A to Pls.' Motion to Compel).   Despite the relatively straightforward nature of the claims, Plaintiffs' Notice contained 15 broad topics of inquiry for the corporate representative(s).  On February 24, 2021, Diebold timely

---

[1] Plaintiffs' contention that Diebold "does not have any policy and does not train its technicians on taking steps to prevent or eliminate the danger [created by residual or overspray of cleaners and lubricants] in the first place, nor does [Diebold] supervise its service technicians in terms of its clean up policy" (ECF No. 21, Pls.' Motion to Compel at p. 2) misstates facts and is completely incorrect.

served its Objection and Response to Re-Notice of Taking Video Deposition agreeing to produce corporate representatives to address 10 of the 15 topics listed in the Notice.  (ECF No. 21-3, Exhibit C to Pls.' Motion to Compel).  Diebold subsequently produced those witnesses for deposition on March 8, 2021.

Diebold objected to the remaining five topics:

- **Request No. 1 (Insurance Policies)** – Diebold objected on the ground that (a) it had already produced the Declarations Page for the applicable insurance policy (which speaks for itself); (b) the Request was vague and unclear as to what aspects of the insurance policy the witness was expected to address; and (c) many issues regarding insurance coverage extend beyond the realm of a fact witness.  **Plaintiffs subsequently withdrew this Request.**

- **Request No. 10 (Material Safety Data Sheets)** – Diebold objected that this Request was overly broad and did not identify the topic with sufficient particularity.  Importantly, Diebold expressly explained that **"Diebold needs further clarification before it is able to identify a corporate representative on this topic."**

- **Request No. 13 (Agreements between Diebold and Centennial Bank)** – Diebold objected on the ground that the Diebold/Centennial Bank Managed Services Agreement that Diebold produced speaks for itself and the content of that Agreement was not relevant to Plaintiffs' claims against Diebold.  **Plaintiffs withdrew this Request.**

- **Request No. 14 (Similar Incidents involving Diebold Employees)** – Diebold objected on the ground that the term "similar incidents" was vague and that the Request did not describe with "sufficient particularity" what the Diebold representative was supposed to address with respect to any such "similar incidents."

- **Request No. 15 (Similar Incidents involving Diebold Customers)** – Diebold objected on the ground that the term

"similar incidents" was vague and that the Request did not describe with "sufficient particularity" what the Diebold representative was supposed to address with respect to any such "similar incidents."

Noticeably absent from Plaintiffs' Motion to Compel is any substantive meet-and-confer efforts by Plaintiffs. When Diebold served its Objections and Response, it offered to discuss any questions. (See 2/23/21 email from S. Fox to D. Rash, attached hereto as Exhibit A). The earlier emails in the string (also included in Exhibit A) similarly offer to discuss these issues with Plaintiffs. Plaintiffs never contacted Diebold to confer on any of the objections despite Diebold's objection to Request No. 10 expressly stating that Diebold needed further clarification.

It was not until March 9, 2021, when the parties exchanged drafts of the Fourth Joint Discovery Status Report, that Plaintiffs raised these issues again. When Diebold objected to Plaintiffs' proposed statement that Diebold had agreed to produce a third corporate representative to address Requests 10, 14, and 15, Diebold again offered to meet and confer: "We are willing to meet and confer regarding our objections and response to the Re-Notice of Rule 30(b)(6) deposition – that simply has not occurred yet. We have not heard from you regarding those objections until today." (See 3/9/21 email string between S. Fox and D. Rash, attached hereto as Exhibit B). Plaintiffs' counsel did not offer any of the clarifying points or specifics laid out for the first time in their Motion to Compel. Rather,

Plaintiffs' counsel stated: "We do not think additional meet and confer is now necessary since you clearly said you did not agree to provide another corporate designee to testify on the topics. So, not sure what further is to be worked out unless you have a proposal since I believe we are entitled to discovery via a corporate designee deposition on No. 10 (the specifications of the product used by Mr. Trimmer on the job on the specified day), and Nos. 14 & 15 (other similar incidents before and after the subject incident)." (*Id.*).

Plaintiffs, in other words, did not provide any clarification on the scope of the Requests or the information on which any corporate representative would need to be prepared. Plaintiffs essentially took an all-or-nothing approach to the issue. Perhaps realizing that this approach was not reasonable, however, Plaintiffs' Motion to Compel raises many points never raised with Defendants prior to involving the Court. As such, not only are the remaining topics not stated with sufficient particularity, but Plaintiffs' Motion to Compel is premature.

## III.   <u>LAW AND ARGUMENT</u>

Rule 30(b)(6) places obligations on both the noticing party and the organization being noticed for deposition:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and **must describe with reasonable particularity** the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or

designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. **Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination.** A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify. **The persons designated must testify about information known or reasonably available to the organization.** This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added).  As set forth in the rule, the persons designated by the company have an obligation to testify about information known or reasonably available to the organization.  This requires the corporation to make reasonable efforts to educate its witnesses on the topics of inquiry.  "[U]pon receipt of the notice, the corporation must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought . . . and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed."  *McPherson v. Wells Fargo Bank., N.A.*, 292 F.R.D. 695, 697 (S.D. Fla. 2016) (internal citations omitted).

Given the obligations placed on the corporation, it is only fair that the corporation and witness have notice, "with reasonable particularity," of the areas of inquiry.  The corporation and designated witness should not have to guess or speculate on the scope of the areas of inquiry.  Indeed, the Rule requires the noticing party and the corporation to confer in good faith about the matters of examination.  Fed. R. Civ. P. 30(b)(6).  As explained in further detail below,

6

Plaintiffs did not state the remaining three areas of inquiry with "reasonable particularity" and did not confer about the matters in advance of filing their Motion to Compel.

### A.    Request No. 10 (Material Safety Data Sheets)

A request to produce a corporate representative to testify about "all specification sheet/documents and/or material safety data sheets for all lubricants, cleaners and/or other substances used during the performance of any repairs, maintenance, or cleaning and/or lubrication" is indeed overbroad and vague.  It does not identify what information within that very broad topic a witness should be prepared to answer "fully, completely, and unevasively."  Although it appears from their Motion to Compel that Plaintiffs intend to focus this topic on how Diebold conveyed information from safety data sheets to its employees, Plaintiffs never provided any of that context to Diebold despite Diebold's request for more information and repeated efforts to meet and confer.  Rather, Plaintiffs withheld this detail until bringing this matter to the Court's attention.

Moreover, the detail and context provided by Plaintiffs – for the first time – in their Motion to Compel demonstrates that an additional corporate representative on this topic is unnecessary.  John Callen – one of Diebold's corporate representatives – already testified that Diebold instructs its service technicians to (a) transport lubricants and cleaners in small containers; (b) carry and keep

lubricants and cleaners in a canvas bag when at a customer location; and (c) clean up any spills.  Mr. Callen also testified about how Diebold trains its employees to apply the lubricants and cleaners, including the use of small amounts of the substances and applying the substances to rags and towels as opposed to directly on the equipment.[2]

Both in its document production and through the deposition testimony of Mr. Callen (corporate representative) and Bryan Trimmer (the technician who serviced the vault door on October 2, 2017), Diebold has also already identified the lubricants and cleaners used and/or potentially used on the vault door on October 2, 2017.  As demonstrated by the MSDS for WD-40 attached to Plaintiffs' Motion to Compel, the MSDS for the subject cleaners and lubricants are publicly available and speak for themselves.  Diebold is not the manufacturer or supplier of these substances, nor is it the author of the sheets.   As such, its fact witnesses are in no better position than Plaintiffs, Plaintiffs' counsel, or the jury to read and interpret the information in those sheets.

In sum, Plaintiffs did not identify this topic with sufficient particularity, did not properly meet and confer to provide necessary detail, and the detail that it did provide for the first time in the context of its Motion to Compel demonstrates that Diebold's witnesses have already provided the type of information that Plaintiffs

---

[2] The transcript from Mr. Callen's deposition is not yet available.  Diebold is willing to supplement with specific testimony upon receipt if the Court desires.

are seeking. Accordingly, Diebold respectfully requests that the Court deny Plaintiffs' Motion to Compel with respect to Request No. 10.

### B.    Request Nos. 14 and 15 (Other Incidents)

Request Nos. 14 and 15 seek a corporate representative to testify about other incidents in which a Diebold employee (No. 14) or customer (No. 15) slipped due to Diebold's use of cleaners or lubricants during a service call. Plaintiffs misunderstand Diebold's objection about these requests being vague. First, Plaintiffs' use of the term "similar incidents" is, in and of itself, vague and objectionable because the determination of "substantial similarity" is ultimately for the Court, not either of the parties. As a result, Diebold objected to the use of that term so there is no suggestion that Diebold is admitting what constitutes a "similar incident."

Second, setting aside the term "similar incident," Diebold understands that Plaintiffs are seeking information about other incidents in which individuals have reported slipping on lubricants or cleaners used during a preventative maintenance service call. Diebold is not arguing that this component of the request is vague. However, it is not clear whether Plaintiffs expect a corporate representative to simply identify the existence and general background information (date, location, type of service job), or whether Plaintiffs expect and anticipate the witness to testify about details, such as the existence of any injury, the result of any

investigation, or the existence of any lawsuit or claim.  To the extent it is the latter, such questioning could extend into areas of work product and attorney-client privilege such that Diebold and its witness are entitled to sufficient detail in advance so that they can be adequately prepared to provide Plaintiffs with any such discoverable information while protecting applicable privileges.  Had Plaintiffs engaged in substantive meet and confer negotiations, the parties could have discussed these issues.[3]

Plaintiffs' failure to provide more detailed information and, more importantly, their failure to confer with Diebold as contemplated by Rule 30(b)(6), justifies the denial of Plaintiffs' Motion to Compel with respect to Request Nos. 14 and 15.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Diebold Nixdorf, Inc. respectfully requests that the Court deny Plaintiffs' Motion to Compel.

---

[3] Diebold's arguments should not be interpreted to mean that "similar incidents" exist. Diebold has not yet located any such incidents, but its investigation is still ongoing.

DATED: March 26, 2021.                    Respectfully submitted,

*/s/ Jon J. Hernan*
Jon J. Hernan
Florida Bar No.: 658588
**BOWMAN AND BROOKE LLP**
Four Northpoint Center
1064 Greenwood Blvd., Suite 212
Lake Mary, FL  32746-5419
Telephone: (407) 585-7600
Facsimile: (407) 585-7610
jon.hernan@bowmanandbrooke.com

Clifford S. Mendelsohn
(admitted *pro hac vice*)
Savannah M. Fox
(admitted *pro hac vice*)
**TUCKER ELLIS LLP**
950 Main Avenue
Suite 1100
Cleveland, OH 44113-7213
Telephone: (216) 592-5000
Facsimile: (216) 592-5009
clifford.mendelsohn@tuckerellis.com
savannah.fox@tuckerellis.com

***Attorneys for Defendant,***
***Diebold Nixdorf, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has

been served via email on March 26, 2021 to the following:

DAVID C. RASH, P.A.
Attorneys for the Plaintiffs
1655 North Commerce Parkway
Suite 303
Weston, Florida
david@dcrashlaw.com
jeff@dcrashlaw.com
maileidys@dcrashlaw.com

*Counsel for Plaintiffs Deborah and Robert Hill*

*/s/ Jon J. Hernan*
Jon J. Hernan